UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

THE BANK OF NEW YORK
MELLON,

     Plaintiff,

v.                                                                    Case No: 6:23-cv-2246-JSS-LHP

MICHAEL GOUDA, COMERICA
BANK, TRUIST, and CITY OF
WINTER PARK, FLORIDA,

     Defendants.
_____/

## ORDER

In November 2023, Plaintiff, The Bank of New York Mellon, initiated this action against Defendants, Michael Gouda, Comerica Bank, Truist, and City of Winter Park, Florida, and former Defendants, Greenspoon Marder, P.A. and two unknown tenants. (Dkt. 1.) In April 2024, Plaintiff voluntarily dismissed the unknown tenants from this case without prejudice, (Dkt. 32; *see* Dkt. 39), and in February 2026, to preserve subject matter jurisdiction, the court granted Plaintiff's motion to dismiss Greenspoon Marder, P.A. from this case without prejudice, (*see* Dkts. 132, 133).[1] The complaint contains three counts: foreclosure of a mortgage (count one), reformation of a modification agreement (count two), and breach of a note (count three). (Dkt. 1.) However, in March 2025, the court permitted Plaintiff

_____

[1] Insofar as Greenspoon Marder LLP was a party to this case as the successor to Greenspoon Marder, P.A., Greenspoon Marder LLP was also dismissed from the case without prejudice. (Dkt. 133.)

to drop count three such that the count was dismissed without prejudice. (Dkt. 82 at 16.) On August 5, 2025, the court held a one-day bench trial on the remaining claims. (Dkt. 122.) Upon consideration of the evidence presented at the trial, the court sets forth its findings of fact and conclusions of law in accordance with Federal Rule of Civil Procedure 52 and directs the Clerk to enter judgment for Plaintiff under Federal Rule of Civil Procedure 58.[2]

## BACKGROUND

Plaintiff seeks to foreclose on real property owned by Gouda. (*See* Dkt. 1.) Plaintiff alleges that its interest in the property is "superior to any other" interest in the property including any interest that Defendants may possess. (*Id.* at 6–7.) In June 2024, the Clerk entered default as to Truist after Truist failed to appear in this case. (Dkt. 43; *see* Dkt. 42.) Although Comerica answered the complaint, (*see* Dkt. 23), Comerica did not appear at the April 10, 2025 final pretrial conference, (*see* Dkt. 101), and only Plaintiff, Gouda, and Winter Park submitted the required joint pretrial statement in advance of the conference, (*see* Dkt. 97). Further, only Plaintiff, Gouda, and Winter Park appeared at the August 5, 2025 trial. (Dkt. 122 at 1–5.)

At the trial, Plaintiff called one witness: Corrie Williams, a foreclosure supervisor with Shellpoint Mortgage also known as NewRez LLC (the company currently servicing the mortgage) as well as Plaintiff's representative under Federal Rule of Civil Procedure 30(b)(6). (Dkt. 122 at 8–110.) During its direct examination

---

[2] To the extent that any findings of fact may constitute conclusions of law, they are adopted as such, and to the extent that any conclusions of law may constitute findings of fact, they are adopted as such.

of Williams, Plaintiff introduced ten exhibits into evidence: a power of attorney allowing Specialized Local Servicing LLC (SLS) to act as Plaintiff's agent for the mortgage on the property (Dkt. 123-1), documents showing the merger of SLS into NewRez LLC (Dkt. 123-2), the note and allonge for the property (Dkt. 123-3), the mortgage for the property (Dkt. 123-4), the modification agreement regarding the note and mortgage (Dkt. 123-5), an assignment of the mortgage to Plaintiff (Dkt. 123-6), letters addressed to Gouda indicating that SLS had assumed servicing of the mortgage (Dkt. 123-7), notices addressed to Gouda indicating that the mortgage was in default (Dkt. 123-8), collection notes regarding the mortgage (Dkt. 123-9), and payment records for the mortgage (Dkt. 123-10).  (*See* Dkt. 123.)

After Plaintiff rested its case-in-chief, the court heard argument on a motion for judgment on partial findings filed by Gouda.  (Dkt. 122 at 114–23.)  In the motion, Gouda maintained that Plaintiff lacked standing to bring this foreclosure case.  (Dkt. 120 at 7–12.)  The court denied the motion in light of evidence supporting that Plaintiff held the note for the property when Plaintiff filed this case.  (Dkt. 122 at 122–23; *see* Dkt. 127.)  Turning to Winter Park's involvement in the case, the court accepted into evidence a stipulation that in the event of a surplus judgment, Winter Park would be entitled to $6,910.02, with no interest, and then the court excused Winter Park from the remainder of the trial.  (Dkt. 122 at 123–24.)  Gouda proceeded with his case-in-chief.  (*Id.* at 124–30.)  He did not call any witnesses, but under Federal Rule of Civil Procedure 32(a)(3), he offered Williams's deposition testimony as witness testimony in his case-in-chief.  (Dkt. 122 at 125 ("We would offer her testimony as contained in

- 3 -

her deposition as witness testimony in our case."); *see* Dkt. 119-1.)  In addition, Gouda moved to admit a document reflecting the certificate holders of loans including the mortgage at issue, but for reasons related to relevance and foundation, the court did not accept the document into evidence.  (Dkt. 122 at 127–30.)

After the trial, the court received proposed findings of fact and conclusions of law from Plaintiff and Gouda.  (Dkts. 125, 126.)  Plaintiff claims entitlement to a final judgment of foreclosure and reformation of the modification agreement to correct clerical omissions and errors.  (*See* Dkt. 126.)  According to Plaintiff, it is due $6,142,447.11 bearing interest at the rate of 9.15% pursuant to 28 U.S.C. § 1961.  (Dkt. 126 at 16.)  For his part, Gouda makes the same arguments against Plaintiff's standing that he made in his motion for judgment on partial findings and does not present other arguments for the court's consideration.  (*See* Dkts. 120, 125.)  The court addresses the standing arguments below in connection with the conclusions of law and rejects the arguments for the reasons discussed during the bench trial.  (*See* Dkt. 122 at 119–23.)

## FINDINGS OF FACT

The court makes the following findings of fact in this case.  In doing so, the court generally credits Plaintiff's documentary evidence and Williams's trial testimony.  The court also generally construes Williams's trial testimony as clarifying her deposition testimony: where the trial testimony conflicts with the deposition testimony, the court generally credits the former over the latter.  The court notes that Williams has worked in the financial industry for over two decades, (*see* Dkt. 122 at 9–10), and at the trial testified to the recordkeeping procedures related to the

documentary evidence, including verification (or quality control) procedures, (*see id.* at 18–25, 62–65).

Plaintiff is a national bank headquartered in New York. (*See* Dkt. 123-1; Dkt. 123-6 at 1.) Gouda is an individual permanently residing in Florida, (*see* Dkt. 1 at 2; Dkt. 84 at 1), and the owner of the property at issue, which is located at 110 Osceola Court, Winter Park, Orange County, Florida 32789, (*see* Dkt. 122 at 46–47; Dkt. 123-4 at 1–2, 11–13). Winter Park is a Florida municipality. (Dkt. 1 at 3; Dkt. 15 at 2.) Comerica is a bank organized under Texas law and headquartered in Texas. (Dkt. 1 at 2; Dkt. 23 at 1; Dkt. 24 at 1.) Through default, Truist has admitted to being a bank organized under North Carolina law and headquartered in North Carolina. (Dkt. 1 at 2.) *See Eagle Hosp. Physicians, LLC v. SRG Consulting, Inc.*, 561 F.3d 1298, 1307 (11th Cir. 2009) (explaining that "[a] defendant, by [its] default, admits the plaintiff's well-pleaded allegations of fact" (quotation omitted)).

On May 6, 2003, Gouda signed a promissory note with Wells Fargo Home Mortgage, Inc. in the original principal amount of $2,500,000.00. (*See* Dkt. 122 at 48; Dkt. 123-3.) The note states that upon defaulting, Gouda may be "immediately . . . and . . . without notice" responsible for the "unpaid principal balance and accrued interest." (Dkt. 123-3 at 3.) The note is payable to Plaintiff, (*see id.* at 5), and is secured by a mortgage, (*see* Dkt. 123-4 at 1). The mortgage is dated May 6, 2003, and was recorded on May 12, 2003, in Official Records Book 06907 at Page 3610. (*See* Dkt. 122 at 45, 47; Dkt. 123-4 at 1.) The note and mortgage provide for interest in addition to the principal. (*See* Dkt. 122 at 48; Dkt. 123-3 at 1–2; Dkt.

123-4 at 1.) The mortgage also states that Gouda's failure to pay could result in a legal proceeding, such as a foreclosure action, and that Gouda would be liable for costs incurred in connection with the proceeding, such as reasonable attorney fees. (*See* Dkt. 122 at 48; Dkt. 123-4 at 6, 10.) The note shows an endorsement to Wells Fargo Bank, N.A., the successor by merger to Wells Fargo Home Mortgage, Inc. (*See* Dkt. 123-3 at 4; *see also* Dkt. 122 at 51; Dkt. 123-6 at 1.) The endorsement appeared on the note prior to the filing of this case. (*See* Dkt. 122 at 46–47.) Plaintiff also held the note prior to the filing of this case. (*See id.*) Wells Fargo Bank, N.A. assigned the mortgage to Plaintiff on August 29, 2013. (*See* Dkt. 123-6 at 1.)

On May 27, 2005, Gouda entered into a modification agreement, which was recorded in Official Records Book 08445 at Page 3506. (*See* Dkt. 122 at 49; Dkt. 123-5 at 1, 7.) The modification agreement concerns the note and mortgage on the property. (*See* Dkt. 123-5 at 1–2, 9.) The agreement's recitals section contains spaces for the date of the note, the original principal amount, and the date that the mortgage was recorded, but these spaces were left blank. (*See* Dkt. 123-5 at 1.) The recitals section also identifies the lender for the note as Wells Fargo Bank, N.A. rather than Wells Fargo Home Mortgage, Inc. (*See* Dkt. 123-5 at 1.) The modification agreement states that Gouda's failure to "pay the full amount of each monthly payment" on the due date would result in his default and that if he defaulted, the holder of the note could notify him in writing that if he failed to "pay the overdue amount by a certain date," the holder of the note could require him to "pay immediately the full amount of principal that ha[d] not been paid and all the interest . . . owe[d] on that amount."

- 6 -

(*Id.* at 4.)

Gouda made no payments on the mortgage after September 2011. (*See* Dkt. 122 at 68–72; Dkt. 123-10 at 86.) In October 2014, Wells Fargo Home Mortgage, Inc. notified Gouda that because he had missed payments, he was in default under the note, mortgage, and modification agreement. (*See* Dkt. 122 at 74–75; Dkt. 123-8 at 7–12.) In February 2023, SLS sent Gouda a notice of default and intent to foreclose. (*See* Dkt. 122 at 74–75; Dkt. 123-8 at 13–16; Dkt. 123-9.) The notices from Wells Fargo Home Mortgage, Inc. and SLS told Gouda that he could cure the default by paying specified amounts by corresponding deadlines. (*See* Dkt. 122 at 76–77; Dkt. 123-8.) As of the time of the bench trial, Gouda had not cured the default or made any payments to Plaintiff. (*See* Dkt. 122 at 75, 79; Dkt. 123-10.)

A payment record dated March 14, 2025, shows that Gouda owes $6,065,315.77 on the mortgage, (Dkt. 123-10 at 132), and Williams testified on August 5, 2025, that this amount represented the total damages owed to Plaintiff, (Dkt. 122 at 105). According to the payment record, this amount includes $2,500,000.00 for the principal balance; $2,194,178.17 for interest at 5% to May 5, 2025 (the projected payoff date stated on the record); $1,155,271.58 for the escrow balance at the loan transfer; $6,447.38 for pre-accelerated late charges; $37,682.23 for insurance; $51,243.87 for taxes; and $120,492.54 for corporate advances. (Dkt. 123-10 at 132.) In its proposed findings of fact and conclusions of law, Plaintiff provides the same figures for the principal and escrow balances, late charges, insurance, and taxes as those reflected in the payment record. (Dkt. 126 at 15–16.) Plaintiff does not mention corporate

advances but lists $1,300.00 for property inspections, $460.00 for property valuation,[3] and $118,732.54 for attorney fees and costs, and these numbers add to $120,492.54. (*See id.*)  Further, at her deposition, Williams described corporate advances as including property inspections, property valuation, and attorney fees and costs, among other expenses.  (Dkt. 119-1 at 26.)  Regarding interest, Plaintiff identifies $2,194,178.17 as the interest from September 1, 2011, to March 14, 2025, and $77,131.34 as the interest from March 15, 2011, to August 5, 2025 (the date of the bench trial).  (Dkt. 126 at 15.)  The claimed interest from March 15, 2011, to August 5, 2025, marks the difference between the $6,142,447.11 that Plaintiff seeks in its proposed findings of fact and conclusions of law, (*see id.* at 16), and the $6,065,315.77 that the payment record and Williams's trial testimony support, (*see* Dkt. 122 at 105; Dkt. 123-10 at 132).

## CONCLUSIONS OF LAW

The court first considers preliminary matters such as jurisdiction and venue. The court then takes the two remaining counts in reverse order, beginning with count two seeking reformation and ending with count one—the foreclosure count at the heart of this action, on which the parties have concentrated their arguments.

---

[3] In fact, Plaintiff lists $460.00 for "BPO/Aprsl," (Dkt. 126 at 16), but does not identify these terms, (*see id. passim*).  The court takes judicial notice, *see* Fed. R. Evid. 201, that in context, the terms refer to Broker's Price Opinion (BPO) and appraisal—different methods of property valuation, *see Fed. Deposit Ins. Corp. v. Chi. Title Ins. Co.*, 137 F. Supp. 3d 1331, 1334 (S.D. Fla. 2015) (stating as factual background that a bank "obtained an appraisal and a 'broker's price opinion' of [a] [p]roperty, which estimated the [p]roperty's value"); *BPO*, Merriam-Webster's Unabridged Dictionary (online ed. 2026), https://unabridged.merriam-webster.com/unabridged/BPO; *Broker's Price Opinion*, Merriam-Webster's Unabridged Dictionary (online ed. 2026), https://unabridged.merriam-webster.com/unabridged/broker's%20price%20opinion.

## A. Preliminary Matters

The court has subject matter jurisdiction in this case based on diversity of citizenship. 28 U.S.C. § 1332(a)(1). For purposes of diversity jurisdiction, a national bank is "a citizen of the [s]tate in which its main office, as set forth in its articles of association, is located." *Wachovia Bank, N.A. v. Schmidt*, 546 U.S. 303, 307 (2006). In contrast, a state bank, as a corporation, is a citizen of its states of incorporation and principal place of business. *Id.* at 306 ("A business organized as a corporation, for diversity jurisdiction purposes, is 'deemed to be a citizen of any [s]tate by which it has been incorporated' and, since 1958, also 'of the [s]tate where it has its principal place of business.' § 1332(c)(1). State banks, usually chartered as corporate bodies by a particular [s]tate, ordinarily fit comfortably within this prescription."); *Evergreen Forest Prods. of Ga. v. Bank of Am., N.A.*, 262 F. Supp. 2d 1297, 1307 (M.D. Ala. 2003) ("[A] . . . state bank . . . is a citizen of, at most, two states pursuant to 28 U.S.C. § 1332(c)."). Individuals are citizens of the state of their domicile—their "true, fixed and permanent home and principal establishment." *Molinos Valle Del Cibao, C. por A. v. Lama*, 633 F.3d 1330, 1346–47 (11th Cir. 2011) (quotation omitted). The municipalities of a state are citizens of that state. *See Moor v. County of Alameda*, 411 U.S. 693, 717 (1973) ("[A] political subdivision of a [s]tate, unless it is simply the arm or alter ego of the [s]tate, is a citizen of the [s]tate for diversity purposes." (quotation, emphasis, and footnote omitted)); *City of Vestavia Hills v. Gen. Fid. Ins. Co.*, 676 F.3d 1310, 1312 (11th Cir. 2012) (describing a city in Alabama as a citizen of Alabama).

Accordingly, here, Plaintiff, a national bank with its main office in New York, is a citizen of New York. (*See* Dkt. 123-1; Dkt. 123-6 at 1.) State banks Comerica and Truist are citizens of Texas and North Carolina, respectively. (Dkt. 1 at 2; Dkt. 23 at 1; Dkt. 24 at 1.) *See Eagle Hosp.*, 561 F.3d at 1307. Gouda is an individual domiciled in Florida and thus a citizen of Florida. (Dkt. 1 at 2; Dkt. 84 at 1.) Winter Park is a Florida municipality and thus a citizen of Florida. (Dkt. 1 at 3; Dkt. 15 at 2.) Because no Defendant shares Plaintiff's New York citizenship, the requirement of complete diversity is satisfied. *See Triggs v. John Crump Toyota*, 154 F.3d 1284, 1287 (11th Cir. 1998) ("Diversity jurisdiction requires complete diversity; every plaintiff must be diverse from every defendant.").[4] In addition, the amount in controversy exceeds $75,000.00 exclusive of interest and costs, as required. (*See, e.g.*, Dkt. 123-10 at 132.) *See* 28 U.S.C. § 1332(a)(1); *see also Rowe v. U.S. Bancorp*, 569 F. App'x 701, 703 (11th Cir. 2014) (observing in the foreclosure context that "the value of the property— . . . purchased with a loan in the amount of $495,750,000[.00]—far exceeded the jurisdictional threshold").

The court previously concluded that Gouda was properly served, and it incorporates that conclusion into this order. (*See* Dkts. 72, 82.) Further, venue is proper in this court under 28 U.S.C. § 1391(b)(2) because the property to be foreclosed

---

[4] The Greenspoon Marder Defendants were dismissed under Federal Rules of Civil Procedure 21 and 41 in light of Greenspoon Marder LLP's New York citizenship. (*See* Dkts. 128 to 133.) Rule 21 empowers a court to "dismiss a non[]diverse party . . . to preserve jurisdiction over the rest of the case and rescue an otherwise valid judgment." *Thermoset Corp. v. Bldg. Materials Corp. of Am.*, 849 F.3d 1313, 1318 (11th Cir. 2017) (quotation omitted).

is located in Orange County, Florida, (*see* Dkt. 122 at 46–47), in the Middle District of Florida, *see* M.D. Fla. R. 1.04(a).

## B. Count Two: Reformation

Through count two, Plaintiff seeks reformation under Florida law to remedy clerical errors in the modification agreement. (Dkt. 1 at 8–11; *see* Dkt. 125 at 8–13 (citing Florida law in support of proposed conclusions of law); Dkt. 126 at 11–14 (same).) In Florida, a claim for reformation of a written instrument requires that the instrument, as written, "fails to express the agreement of the parties as a result of (1) a mutual mistake or (2) a unilateral mistake by one party coupled with the inequitable conduct of the other party." *Barber v. Am.'s Wholesale Lender*, 542 F. App'x 832, 837 (11th Cir. 2013) (citing *Romo v. Amedex Ins. Co.*, 930 So. 2d 643, 649 (Fla. Dist. Ct. App. 2006)). Reformation applies "to instruments of conveyance of real property as well as to contracts." *Providence Square Ass'n v. Biancardi*, 507 So. 2d 1366, 1369 (Fla. 1987). "[I]n reforming a written instrument, an equity court in no way alters the agreement of the parties. Instead, the reformation only corrects the defective written instrument so that it accurately reflects the true terms of the agreement actually reached." *Id.* at 1370. For purposes of reformation, "[a] mistake is mutual when the parties agree to one thing and then, due to either a scrivener's error or inadvertence, express something different in the written instrument." *Id.* at 1372. "The fact that one party drafts the document does not preclude reformation on the grounds of mutual mistake." *Circle Mortg. Corp. v. Kline*, 645 So. 2d 75, 78 (Fla. Dist. Ct. App. 1994).

"The party seeking reformation based on a mutual mistake must prove its case by clear and convincing evidence." *Se. Com. Fin., LLC v. Dominion Bus. Fin., LLC*, 449 F. App'x 901, 906 (11th Cir. 2011) (alteration adopted) (quoting *BrandsMart U.S.A. of W. Palm Beach, Inc. v. DR Lakes, Inc.*, 901 So. 2d 1004, 1006 (Fla. Dist. Ct. App. 2005)).

Plaintiff has proven by clear and convincing evidence that as a result of mutual mistake, the modification agreement contains a misnomer, as well as omissions concerning dates and an amount, and these clerical errors must be corrected to reflect the true terms of the agreement. (*See, e.g.*, Dkt. 122 at 49–52; Dkt. 123-5 at 1.) Florida law permits courts to reform agreements to correct inadvertent omissions and misnomers. *See Smith v. Royal Auto. Grp., Inc.*, 675 So. 2d 144, 153–54 (Fla. Dist. Ct. App. 1996) ("Given that equity regards as done that which ought to be done, there is no compelling reason why a court may not reform a written instrument to reflect the intentions of the parties, including a party's omitted signature."); *Miley v. Miley*, 402 So. 2d 557, 558 (Fla. Dist. Ct. App. 1981) (reversing the dismissal of a reformation counterclaim when the written contract to be reformed omitted terms "through a mutual mistake or scrivener's error" and "[t]he counterclaim requested reformation of the written contract to the terms"); *Lumbermens Mut. Cas. Co. v. Martin*, 399 So. 2d 536, 537 (Fla. Dist. Ct. App. 1981) ("In view of the clear and unrebutted testimony that a simple mistake had been made, the policy was properly reformed to change the named insured from Felix Martin to Francisco Martin, Sr., the father of the decedent, Francisco, Jr."); *see also Kolski v. Kolski*, 731 So. 2d 169, 173 (Fla. Dist. Ct. App. 1999) (Cope, J., concurring in part and dissenting in part) ("If a check stated the wrong

- 12 -

amount or payee, it could be reformed to correct the error."). Errors concerning dates and amounts are also appropriate subjects for reformation. *See SunBank/N. Fla. N.A. v. Tuttle*, 683 So. 2d 1189, 1189 (Fla. Dist. Ct. App. 1996) ("It appears that it was originally expected that the monthly payments would be $2,885. The bank incorrectly entered the wrong amount in the note. The figure for the monthly payment contained in the note, although caused by the bank's error, resulted in a 'mutual mistake' of the parties as to what the monthly payment should be. The note, therefore, was subject to reformation."); *Circle Mortg.*, 645 So. 2d at 76–77 (Fla. Dist. Ct. App. 1994) (affirming a final judgment reforming a mortgage when a "document contained a clerical scrivener's error, providing that the first interest rate change would occur in December 1993, which was twenty-three months after the closing, as opposed to January 1993, as contemplated by [a] disclosure form").

In this case, the modification agreement, as written, states:

Reference is hereby made to that one certain Promissory Note (the "Note") dated     ,    , in the original principal sum of $         executed by MICHAEL N GOUDA AND KATHRYN GOUDA, Husband and Wife (herein referred to as "Borrower" whether one or more), payable to the order of WELLS FARGO BANK, N.A. ("Lender"), and said Note being secured by, among other instruments, that certain Deed of Trust, Mortgage or Security Deed (the "Security Instrument") of even date therewith duly recorded              , in the Real Property Records of ORANGE County, FLORIDA, the above said instruments concerning encumbering and creating liens against the following described property (the "Property"), to wit:

(Dkt. 123-5 at 1.) The court reforms the modification agreement to instead state:

Reference is hereby made to that one certain Promissory Note (the "Note") dated May 6, 2003, in the original principal sum of $2,500,000.00 executed by MICHAEL N GOUDA AND KATHRYN

- 13 -

GOUDA, Husband and Wife (herein referred to as "Borrower" whether one or more), payable to the order of WELLS FARGO HOME MORTGAGE, INC. ("Lender"), and said Note being secured by, among other instruments, that certain Deed of Trust, Mortgage or Security Deed (the "Security Instrument") of even date therewith duly recorded May 12, 2003, in the Real Property Records of ORANGE County, FLORIDA, the above said instruments concerning encumbering and creating liens against the following described property (the "Property"), to wit:

(*See* Dkt. 1 at 9–10.)  As reformed, the modification agreement identifies the date of the note as May 6, 2003, the amount of the principal as $2,500,000.00, (*see* Dkt. 122 at 48; Dkt. 123-3), the name of the lender as Wells Fargo Home Mortgage, Inc. (rather than Wells Fargo Bank, N.A., the successor by merger to Wells Fargo Home Mortgage, Inc., (*see* Dkt. 123-3 at 4; *see also* Dkt. 122 at 51; Dkt. 123-6 at 1)), and the date when the mortgage was recorded as May 12, 2003, (*see* Dkt. 122 at 45, 47; Dkt. 123-4 at 1).

## C. Count One: Foreclosure

Through count one, Plaintiff seeks a foreclosure under Florida law.  (Dkt. 1 at 6–8; *see* Dkt. 125 at 8–13; Dkt. 126 at 11–14.)  Florida law emphasizes that "a plaintiff must prove that it had standing to foreclose when the complaint was filed."  *U.S. Bank N.A. v. Becker*, 211 So. 3d 142, 144 (Fla. Dist. Ct. App. 2017) (quotation omitted); *see McLean v. JP Morgan Chase Bank N.A.*, 79 So. 3d 170, 172 (Fla. Dist. Ct. App. 2012) ("A crucial element in any mortgage foreclosure proceeding is that the party seeking foreclosure must demonstrate that it has standing to foreclose.").  "A party may establish standing by showing that it was entitled to enforce the note at the time it filed

suit." *Becker*, 211 So. 3d at 144.  A person is "entitled to enforce an instrument" if the person is "the holder of the instrument," "a non[-]holder in possession of the instrument who has the rights of a holder," or "a person not in possession of the instrument who is entitled to enforce the instrument pursuant to section 673.3091 or section 673.4181(4)" of the Florida Statutes.  *Id.* (alterations adopted and quotations omitted).

In his proposed findings of fact and conclusions of law, Gouda contests Plaintiff's standing to foreclose, advancing two arguments.  (Dkt. 125.)  First, Gouda focuses on the chain of the note's endorsements, challenging the validity of the endorsements.  (*Id.* at 8–14.)  Second, Gouda claims that Plaintiff lacks standing because it failed to comply with requirements that Florida law imposes for a plaintiff seeking to foreclose a mortgage.  *See* Fla. Stat. § 702.015.  (Dkt. 125 at 2–3 & n.2, 14.)  Neither argument is persuasive.  As to the first argument, because Gouda is not a party to the endorsements, he "ha[s] no standing to challenge their validity."  *Bank of N.Y. Mellon v. Lopez*, 408 So. 3d 773, 776 (Fla. Dist. Ct. App. 2025); *see Castillo v. Deutsche Bank Nat'l Tr. Co.*, 89 So. 3d 1069, 1069 (Fla. Dist. Ct. App. 2012).  As to the second argument, section 702.015(4) requires a plaintiff "in possession of the original promissory note" to file with the court a certification of possession and to attach to the certification "[c]orrect copies of the note and all allonges to the note."  Fla. Stat. § 702.015(4).  Gouda asserts that Plaintiff's certification of possession is ineffective because although the certification states that "[a] true and correct copy of the original promissory note, with attached allonge, is attached hereto," (Dkt. 1-5 at 3), the note

- 15 -

and allonge are not attached to the certification, (*see id. passim*).  (Dkt. 125 at 2–3 & n.2, 14.)   Gouda is technically correct: the note and allonge are attached to the complaint as Exhibit A, (Dkt. 1-2), and the certification of possession is attached to the complaint as Exhibit D, (Dkt. 1-5), but the note and allonge are not attached to the certification, (*see id.*).

The second argument assumes that section 702.015(4) is substantive rather than procedural.  *See Horowitch v. Diamond Aircraft Indus., Inc.*, 645 F.3d 1254, 1257 (11th Cir. 2011) ("[A] federal court sitting in diversity jurisdiction . . . appl[ies] the substantive law of the forum state, in this case Florida, alongside federal procedural law.").  To the extent that section 702.015(4) is procedural, the court does not apply it.  *See id.*; *see also* Fla. R. Civ. P. 1.115(c) (a state procedural rule containing the same requirements as section 702.015(4)).   To the extent that section 702.015(4) is substantive, the court exercises its discretion to overlook Plaintiff's technical noncompliance.  *See* Fla. Stat. § 702.015(6) ("The court *may* sanction the plaintiff for failure to comply with this section." (emphasis added)); *RBS Citizens N.A. v. Reynolds*, 231 So. 3d 591, 592 (Fla. Dist. Ct. App. 2017) (observing that "[s]ection 702.015(6) gives a trial court discretionary authority"); *Campbell v. Wells Fargo Bank, N.A.*, 204 So. 3d 476, 479–80 (Fla. Dist. Ct. App. 2016) ("The certification requirement . . . was not intended to be a prerequisite to suit but was instead intended to expedite the foreclosure process.  In fact, section 702.015(6) states that the court may sanction a plaintiff for failure to comply, which contradicts any argument that these are mandatory conditions precedent to suit or that the complaint must be dismissed for

- 16 -

failure to comply . . . ." (citation omitted)).

Plaintiff has standing to foreclose on the property as the holder of the note and mortgage at the time of this lawsuit. *See Becker*, 211 So. 3d at 144; *see also Citron v. Wachovia Mortg. Corp.*, 922 F. Supp. 2d 1309, 1324 (M.D. Fla. 2013) ("It is well settled under Florida law that the holder of a note and mortgage . . . has standing to seek enforcement of the note and mortgage."). The note is payable to Plaintiff, (*see* Dkt. 123-3 at 5), and Plaintiff held the note prior to the filing of this case, (*see* Dkt. 122 at 46–47). Further, the mortgage was assigned to Plaintiff over a decade before Plaintiff initiated this action. (*See* Dkt. 123-6 at 1.) *See Bank of N.Y. Mellon v. Kardok*, 367 So. 3d 512, 517 (Fla. Dist. Ct. App. 2023) ("[T]he assignment was *direct evidence* that the note's ownership passed from the original lender to the bank.").

In addition to establishing standing to foreclose, a plaintiff seeking a foreclosure in Florida must establish "a default by the defendant," "acceleration of the debt to maturity," and "the amount due." *U.S. Bank N.A. v. Devoe*, 315 So. 3d 1232, 1234 (Fla. Dist. Ct. App. 2021) (quoting *Liberty Home Equity Sols., Inc. v. Raulston*, 206 So. 3d 58, 60 (Fla. Dist. Ct. App. 2016)). Plaintiff has proven each of these elements "with competent substantial evidence"—in the form of documentary exhibits and Williams's testimony—"to which there was no contrary proof, thus entitling [Plaintiff] to entry of a judgment of foreclosure in its favor." *Id.* at 1235. Gouda defaulted when he stopped paying his mortgage in September 2011, and the debt accelerated to maturity after Gouda failed to cure the default despite notices sent to him with instructions for curing it, including a notice of intent to foreclose. (*See* Dkt. 122 at 68–79; Dkts. 123-8, 123-

- 17 -

9, 123-10.) *Cf. Green v. Specialized Loan Servicing LLC*, 766 F. App'x 777, 782 (11th Cir. 2019) ("When the promissory note secured by the mortgage contains an optional acceleration clause [i.e., the entire amount of the loan comes due upon default], the foreclosure cause of action accrues, and the statute of limitations begins to run, on the date the acceleration clause is invoked or the stated date of maturity, whichever is earlier." (alteration in original) (quoting *Smith v. Fed. Deposit Ins. Corp.*, 61 F.3d 1552, 1561 (11th Cir. 1995))). Additionally, Plaintiff has furnished payment records, (*see* Dkt. 123-10), and testimony, (*see* Dkt. 119-1 at 26; Dkt. 122 at 105), supporting the amount due. (*See also* Dkt. 126 at 15–16.)

The note and mortgage are valid, enforceable contracts, under which Gouda defaulted when he failed to make required payments, and Gouda has not cured his default. Further, Plaintiff satisfied all conditions precedent to this action, including through SLS's February 2023 notice to Gouda. Accordingly, by the terms of the mortgage, Plaintiff is entitled to the final judgment of foreclosure below, as Plaintiff's mortgage lien is a first-priority lien on the property.

## CONCLUSION

Based on the above findings of fact and conclusions of law, the Clerk is **DIRECTED** to enter judgment in favor of Plaintiff as stated below, to terminate any pending motions and deadlines, and to close this case.

## FINAL JUDGMENT OF FORECLOSURE

1. The modification agreement is reformed as explained in this order.

2. Plaintiff is due the following:

| | |
|---|---:|
| principal due on the note secured by the mortgage foreclosed | $ 2,500,000.00 |
| interest on the note and mortgage from September 1, 2011, to March 14, 2025 | $ 2,194,178.17 |
| interest on the note and mortgage from March 15, 2011, to August 5, 2025 | $ 77,131.34 |
| late charges | $ 6,447.38 |
| escrow balance at loan transfer | $ 1,155,271.58 |
| taxes | $ 51,243.87 |
| insurance | $ 37,682.23 |
| property inspections | $ 1,300.00 |
| property valuation (Broker's Price Opinion (BPO) and appraisal) | $ 460.00 |
| attorney fees and costs | $ 118,732.54 |
| **Total** | **$ 6,142,447.11** |

3. This amount shall bear interest at the legal rate. *See* 28 U.S.C. § 1961.

4. If the total amounts due under this Judgment are not paid before the commencement of the Foreclosure Sale, the United States Marshall or, at the option of Lender (also known as Plaintiff) exercised by Lender filing within forty-five days after entry of this Judgment, a Notice of Selection of Foreclosure Sale Master, a special master selected by Lender as permitted by Federal Rule of Civil Procedure 53, shall sell the Collateral, in accordance with the provisions of 28 U.S.C. §§ 2001 and 2002, at a public sale, for cash in hand, to the highest bidder, through the Orange County Courthouse, 425 N. Orange Ave., Suite 350, Orlando, Florida 32801, during the legal hours of sale, on such date and time as selected by the Marshall or Master, as applicable, as applicable, after

consultation with Lender also known as Plaintiff (the Foreclosure Sale). The Marshall or Master, as applicable, shall give public notice of the time and place of such sale, pursuant to 28 U.S.C. § 2002, by publication in a newspaper published in Orange County, once a week for four consecutive weeks, beginning not less than twenty-eight days from the date of sale. The Marshall or Master, as applicable, shall and is authorized to conduct the foreclosure pursuant to the terms of this Judgment, and the provisions of section 45.031, Florida Statutes, shall apply.

5. Lender may be a bidder and purchaser of the Collateral at the sale. If Lender is the successful purchaser as the highest bidder at the Foreclosure Sale, the Marshall or Master, as applicable, shall credit Lender's bid with the amount due as set forth in this order, including interest and the costs of publication and fees due to the Marshall or Master, as applicable, incurred by Lender subsequent to entry of this Judgment (Subsequent Amounts), or such part as is necessary to pay the bid in full. If Lender is not the purchaser at the sale, Lender shall be reimbursed from the proceeds of the sale, so far as they are sufficient, by the Marshall or Master, as applicable, for the Subsequent Amounts.

6. The successful bidder for the Collateral shall be required to pay the cost of the documentary stamps and any recording fees in accordance with any state, county, or local laws. If a successful bidder other than Lender fails to pay the entire bid amount by the deadline established by the Marshall or Master, as applicable, Lender shall, upon filing a motion be entitled to have the sale of the

Collateral set aside and rescheduled pursuant to the terms of this Judgment.

7. Promptly upon the sale of the Collateral, the Marshall or Master, as applicable, shall make a report of the sale to this court for an Order confirming the sale. Upon such confirmation by the court and receipt of the full purchase price of the sale, the Marshall or Master, as applicable, is authorized to and shall execute and deliver a Marshall's Deed or Master's Deed to the successor bidder conveying the Collateral. Thereafter, the purchaser at the sale and its heirs, representatives, successors, or assigns, shall without delay be let into the possession of the Collateral. The Marshall shall execute any writ of assistance issued by this court at the written request of successful bidder.

8. Upon the Marshall or Master, as applicable, certifying the sale to the court, Obligors, and all entities or persons claiming under or against Obligors, shall be foreclosed of all interest, estate or claim in the Collateral and shall forever be barred and foreclosed of any and all equity or right of redemption in and to any of the Collateral.

9. Upon confirmation of the sale and delivery of the Marshall's Deed or Master's Deed, as applicable, to the successful bidder, the Marshall or Master, as applicable, shall distribute the proceeds of the sale of the Collateral, if they exist and so far as they are sufficient, as follows:

   a. To the Marshall or Master, as applicable, for its costs and expenses incurred in connection with this cause and the sale ordered above as authorized by this Judgment and applicable, law, unless Lender has paid

the same in which case Lender shall be entitled to receive those amounts as Subsequent Costs as provided below.

b. To Lender, if not the purchaser of the Collateral at the sale, all amounts adjudged herein to be due and owing, including the Subsequent Costs of these proceedings.

c. To Winter Park, insofar as in the event of a surplus judgment, Winter Park is entitled to $6,910.02, with no interest.

d. With the remaining balance, if any, to be deposited in the registry of this court, and in that event, the Clerk is directed within ten days of the date of said deposit to give notice to Obligors, in order that Obligors might by appropriate pleadings make claim to any such surplus.

10. Lender is authorized, if it desires and in its sole discretion, to assign its rights in and to this Judgment, without further order from this court, by providing the Marshall or Master, as applicable, with an assignment of the rights to the Judgment, and such entity or person shall be entitled to credit its bid with the total sum with interest and cost accruing subsequent to this Judgment, or such part of it, as is necessary to pay the bid in full.

11. The court does not reserve jurisdiction over this matter. *See John Hancock Life Ins. Co. (USA) v. Intemann*, No. 3:13-cv-1130-J-34JRK, 2014 WL 5325710, at \*3, 2014 U.S. Dist. LEXIS 149002, at \*8 (M.D. Fla. Oct. 20, 2014) ("The [c]ourt generally declines requests to retain jurisdiction . . . .").

**ORDERED** in Orlando, Florida, on February 26, 2026.

JULIE S. SNEED
UNITED STATES DISTRICT JUDGE

Copies furnished to:

Counsel of Record
Unrepresented Parties